**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **HARLAND CLARKE HOLDINGS** | ) | |
| **CORP. and SCANTRON CORP.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Civil Action No.  SA-13-CA-724-XR** |
| **VS.** | ) | |
| | ) | |
| **MICHAEL MILKEN and** | ) | |
| **KALYANARAMAN SRINIVASAN,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**ORDER**

Defendants move to transfer this case to the district court for the District of Delaware pursuant to 28 U.S.C. § 1404(a) (docket no. 18) or, alternatively, to dismiss this case for improper venue (docket no. 38).  After careful consideration, the Court will grant the motion to transfer.

**I. Background**

Plaintiff Scantron is a Delaware corporation, and Plaintiff Harland Clarke Holdings ("Harland Clarke") is Scantron's parent company based in San Antonio, Texas.  Scantron alleges that it is also headquartered in San Antonio, but Defendants dispute this fact and assert that Scantron is headquartered in Minnesota.  *See* docket no. 18 at 1-2.[1]  Harland Clarke is a holding company that owns and operates multiple business, including Harland Clarke Corporation and Scantron.  First Am. Compl ¶ 12.

In 2010, Scantron purchased a business based in Bellevue, Washington known as

---

[1] Plaintiffs assert that Scantron's CEO, CFO, and General Counsel reside in San Antonio. Docket no. 41 at 4 n.2.

GlobalScholar from non-party KUE Digital International, L.L.C. ("Digital").[2] Digital is a holding company that does not conduct business. Plaintiffs allege that "[o]fficers, agents and other representatives of Harland Clarke, with assistance from [its parent company M&F Worldwide Corp.], conceived of the acquisition of the GlobalScholar business for its Scantron subsidiary and led the acquisition negotiations and due diligence efforts." First Am. Compl. ¶ 12. In order to "evaluat[e] a possible transaction with Digital," Harland Clarke entered into a Nondisclosure Agreement with Digital to obtain confidential information in September 2010. Maron Decl. Ex. A. This Nondisclosure Agreement does not contain a forum-selection clause.

On November 10, 2010, Harland Clarke sent a letter to Digital via Defendant Kalyanaraman Srinivasan (known as "Kal Raman"). The letter states, "Pursuant to recent discussions, we are pleased to submit our non-binding indication of interest for the acquisition (the 'Transaction') of KUE Digital International LLC dba GlobalScholar including all subsidiaries (the 'Company') by Harland Clarke Holdings Corp. or Scantron Corporation, our wholly owned subsidiary (collectively, 'we' or 'us')." Maron Decl. Ex. B. The letter continued, "We would expect to negotiate and execute a purchase agreement for the Transaction containing customary terms," including "a customary set of seller representations and warranties covering GlobalScholar," "indemnification of certain purchaser indemnified parties by seller indemnifying parties for customary matters such as the following matters and others that may arise in due diligence: breaches of representations, warranties and covenants in the purchase agreement or related instruments; pre-closing tax liabilities (subject to reserves); unpaid Transaction expenses; and pre-closing indebtedness of the Company not extinguished at closing." Id. The "rationale" section of the offer letter states, "We have been very impressed with the management of GlobalScholar and we would welcome GlobalScholar's management and employees as an integral component of the Scantron and Harland Clarke Holdings culture." Id. The letter was "agreed and accepted" by Kal Raman as CEO of Digital. Id.

Scantron and Digital entered into a "Securities Purchase Agreement between Scantron

---

[2] The GlobalScholar business consisted of KUE Digital, Inc. d/b/a GlobalScholar and two related subsidiaries, KUED Sub I, LLC and KUED Sub II, LLC (both Delaware LLCs). At the time of the transaction, Digital wholly owned the three entities that comprised the GlobalScholar business. Maron Decl. ¶ 4. The GlobalScholar business was Digital's primary asset. Id. ¶ 8; Purch. Agrmt. § 3.05(a).

Corporation and KUE Digital International, LLC" (the "Purchase Agreement") dated December 15, 2010.[3]  The Purchase Agreement contains the following choice-of-law and forum-selection clause:

> §11.10 Governing Law; Consent to Jurisdiction. *All matters relating to this Agreement or the breach, interpretation, construction, validity, termination and enforcement of this Agreement shall be governed by and construed in accordance with the domestic laws of the State of Delaware without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of Laws of any jurisdiction other than the State of Delaware*. Subject to Sections 1.04, 1.05, 6.02 and 11.11 herein, and the alternative dispute resolution provisions contained therein, *each of the Parties hereby irrevocably and unconditionally submits, for itself and its assets and properties, to the exclusive jurisdiction of any Delaware State court in New Castle County, or Federal court of the United States of America, sitting within New Castle County in the State of Delaware, and any respective appellate court, in any action or proceeding arising out of or relating to this Agreement, the agreements delivered in connection with this Agreement, or the transactions contemplated hereby or thereby*, or for recognition or enforcement of any judgment relating thereto, and *each of the Parties hereby irrevocably and unconditionally (i) agrees not to commence any such action or proceeding except in such courts*; (ii) agrees that any claim in respect of any such action or proceeding may be heard and determined in such Delaware State court or, to the extent permitted by applicable Law, in such Federal court; (iii) waives to the fullest extent it may legally and effectively do so, any objection which it may now or hereafter have to the laying of venue of any such action or proceeding in any such Delaware State or Federal court; and (iv) waives, to the fullest extent permitted by applicable Law, the defense of lack of personal jurisdiction or an inconvenient forum to the maintenance of such action or proceeding in any such Delaware State or Federal court. . . .

Maron Decl. Ex. C § 11.10 (emphasis added).

Various parties entered into additional agreements related to the transaction.  These additional agreements are referenced in the Purchase Agreement, which defines the "Transaction Documents" as "this Agreement, the Escrow Agreement, the Transaction Incentive Plan, the Guarantees and the Restrictive Covenant Agreement."  Section 11.08 of the Purchase Agreement, entitled "Complete Agreement," states, "This Agreement (including the exhibits hereto and the Disclosure Schedules) and the documents referred to herein (including the Escrow Agreement)

---

[3] It is undisputed that Harland Clarke was actively involved in negotiating the Purchase Agreement.

contain the complete agreement between the Parties hereto and supersede any prior understandings, agreements or representations by or between the Parties, written or oral, which may have related to the subject matter hereof in any way."  Maron Decl. Ex. C § 11.08.  All of the Transaction Documents include a forum-selection clause like the one in the Purchase Agreement designating Delaware as the exclusive forum for disputes arising out of or related to the agreement and the transactions contemplated thereby.

As part of the sale, Scantron required Raman and Digital's primary equity holders to guarantee Digital's performance of certain obligations in the Purchase Agreement in proportion to their economic interests in Digital, through limited guarantees.  Maron Decl. ¶ 8.  The Purchase Agreement preamble states, "Whereas, concurrently with the execution and delivery of this Agreement, each of (i) Knowledge Universe Education L.P. ["KUE LP"], (ii) Ignition Venture Partners III, L.P., (iii) Ignition Managing Directors Fund III, LLC and (iv) the Key Employee [Kal Raman] has delivered to Buyer a limited guarantee, dated as of the date of this Agreement and effective as of the Closing (each, 'Guarantee' and collectively, the 'Guarantees')."

Under the Limited Guarantee signed by Scantron and Raman, subject to certain limitations, Raman guaranteed to Scantron "the due and punctual observance, performance and discharge of all of the payment and indemnification obligations of Seller under the Purchase Agreement (including such obligations that arise as a result of the non-performance by Seller of its obligations under the Purchase Agreement."  Maron Decl. Ex. E.  Scantron agreed "that it shall not institute, and shall cause each of its Affiliates [including Harland Clarke] and representatives not to institute, directly or indirectly, any Action arising under, or in connection with, this Guarantee, the Purchase Agreement or the transactions contemplated thereby against the Guarantor or any Non-Recourse Party except for (i) claims by the Guaranteed Party against the Guarantor under and in accordance with this Guarantee or (ii) claims by the Guaranteed Party against Seller under and in accordance with the Purchase Agreement.  Recourse against the Guarantor and/or the Seller in accordance with Actions permitted by clauses (i) and (ii) immediately above shall be the sole and exclusive remedy of the Guaranteed Party and all of its Affiliates against the Guarantor or any Non-Recourse Party in respect of any liabilities or obligations arising under, or in connection with, the Purchase Agreement or any of the other agreements contemplated thereby, or the transactions contemplated thereby, and

-4-

such recourse shall be subject to the limitations described herein and therein."

The Limited Guarantee signed by Scantron and KUE LP is substantially similar, except that Scantron agreed that it would not institute, and would cause each of its Affiliates not to institute, directly or indirectly, "any Action arising under, or in connection with, this Guarantee, the Purchase Agreement or the transactions contemplated thereby against the Guarantor or any Non-Recourse Party except for (i) claims by the Guaranteed Party against the Guarantor under and in accordance with this Guarantee, (ii) claims by the Guaranteed Party against Seller under and in accordance with the Purchase Agreement, or (iii) claims under and in accordance with the Restrictive Covenant Agreement." Maron Decl. Ex. D. Scantron agreed that "[r]ecourse against the Guarantor and/or the Seller in accordance with Actions permitted by clauses (i) through (iii) immediately above shall be the sole and exclusive remedy of the Guaranteed Party and all of its Affiliates against the Guarantor or any Non-Recourse Party in respect of any liabilities or obligations arising under, or in connection with, the Purchase Agreement or any of the other agreements contemplated thereby, or the transactions contemplated thereby, and such recourse shall be subject to the limitations described herein and therein." *Id.* " "Non-recourse parties" include "(i) any former, current or future general or limited partners, stockholders, holders of any equity, partnership or limited liability company interest, officer, member, manager, director, employees, agents, controlling Persons, assignee or any Affiliates of the Guarantor [KUE LP] (other than Seller [Digital]) and (ii) any former, current or future general or limited partners, stockholders, holders of any equity, partnership or limited liability company interest, officer member, manager, director, employees, agents, controlling Persons, assignee or Affiliates (other than Guarantor) of any of the foregoing." Defendant Michael Milken is a Non-Recourse Party as defined in the Limited Guarantee between Scantron and KUE LP.[4]

On April 4, 2013, the Chief Legal Officer of M&F Worldwide, a parent company of Scantron and Harland Clarke,[5] sent a letter to an attorney for Michael Milken and Knowledge Universe. The

---

[4] Plaintiffs' own pleading alleges that Milken controls KUE LP. First Am. Compl. ¶¶7, 8, 15 ("Milken is a 'Control Person' as that term is defined by the Texas Securities Act."). In addition, Milken is the Chairman of KUE Management, Inc., KUE LP's general partner. Maron Decl. ¶ 3.

[5] Harland Clarke is an indirect, wholly owned subsidiary of M&F Worldwide Corp. First Am. Compl. ¶ 12.

letter asserted that Milken and Knowledge Universe had engaged in fraudulent inducement and breaches of the Purchase Agreement (specifically, sections 3.09(b), 3.10, 3.19, and "other provisions") and sought to settle the claims.

On June 17, 2013, Plaintiffs Scantron and Harland Clarke filed this lawsuit in Texas state district court against Defendants KUE LP, Knowledge Universe Education Holdings, Inc., Michael Milken, and Kal Raman.  Plaintiffs allege that Milken co-founded and is Chairman of Knowledge Universe and that he "directly or indirectly owned, operated and controlled Knowledge Universe, and one of its many affiliated entities, KUE Digital International LLC."  First Am. Compl. ¶ 14. Plaintiffs allege that Raman was the Chief Executive Officer of GlobalScholar and an officer of Knowledge Universe.  *Id.* ¶ 8.[6]  Plaintiffs have not sued Digital, the party that signed the Purchase Agreement and actually sold GlobalScholar to Plaintiffs.

Plaintiffs allege that Milken and Raman, "through lies and deception, engineered the sale to Plaintiffs of GlobalScholar at a fraudulently inflated price."  First Am. Compl. ¶ 8.  Plaintiffs allege that they were induced into paying $135,000,000 to Digital to purchase GlobalScholar, *id.* ¶ 10, and that they "received and relied upon representations of Defendants in their collective decision to spend $135,000,000 to acquire" GlobalScholar, *id.* ¶ 12.  *See also id.* ¶ 13 ("Scantron . . . received and relied upon representations of Defendants in its decision along with Harland Clarke to spend $135,000,000 to acquire [GlobalScholar]."); ¶ 31 ("On January 3, 2011, based upon Defendants' representations, assurances, materials, and financial information, including the endorsements provided by Milken himself, Plaintiffs agreed to pay and did pay $135,000,000 for GlobalScholar."). The First Amended Complaint, currently the live pleading, asserts causes of action for violations of the Texas Securities Act, statutory fraud under the Texas Business & Commerce Code (fraud in a stock transaction), common-law fraud, fraud by nondisclosure, negligent misrepresentation, aiding and abetting fraud (against Milken only), conspiracy, and "actual and apparent authority."  Plaintiffs do not assert any claims for breach of warranty or breach of contract.

Defendants Milken and Raman removed the case on the basis of diversity jurisdiction, asserting that the non-diverse defendants were improperly joined.  Plaintiffs moved to remand, but

---

[6] Defendants state that Raman was a director of GlobalScholar and Digital at the time of the sale.  Maron Decl. ¶ 4.

later voluntarily dismissed non-diverse Defendants KUE L.P. and Knowledge Universe Education Holdings and withdrew the motion to remand.

Defendants moved to transfer the case to the district court for the District of Delaware under 28 U.S.C. § 1404(a). Section 1404(a) provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." In the alternative, pending a decision from the Supreme Court in *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, Plaintiffs filed a motion to dismiss or transfer pursuant to Rule 12(b)(3), Rule 12(b)(6), and § 1406(a). After initial briefing was complete, the Supreme Court issued its decision in *Atlantic Marine*, holding that Rule 12(b)(3) and § 1406(a) were not appropriate procedural vehicles for enforcing a forum-selection clause when Plaintiffs' chosen venue was a proper venue under federal venue statutes. Because all parties agree that venue is proper in this district under the federal venue statutes, Defendants have withdrawn their motion under Rule 12(b)(3) and § 1406(a), but maintain their motion to dismiss under Rule 12(b)(6) in the event that the Court denies their motion under § 1404(a).

## II. Discussion

**A. *Atlantic Marine***

In *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, 134 S. Ct. 568 (2013), the Supreme Court held that a party may not enforce a forum-selection clause by seeking dismissal of the suit under § 1406(a) and Rule 12(b)(3) because those apply only when venue is "wrong" or "improper," as determined by federal venue laws. Rather, a forum-selection clause may be enforced through a motion to transfer under § 1404(a), which "permits transfer to any district where venue is also proper (*i.e.*, 'where [the case] might have been brought') or to any other district to which the parties have agreed by contract or stipulation." *Id.* at 579. "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause" and a proper application of § 1404(a) requires that a forum-selection clause be "given controlling weight in all but the most exceptional cases" unrelated to the convenience of the parties. *Id.* at 581.

In the typical § 1404(a) analysis, the district court weighs the relevant factors and decides

-7-

whether, on balance, a transfer would serve "the convenience of parties and witnesses" and otherwise promote "the interest of justice." *Id.*[7] However, the typical § 1404(a) analysis is adjusted when the transfer motion is premised on a forum-selection clause. *Id.* "The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." *Id.* First, the plaintiff's choice of forum merits no weight, and the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. *Id.* Second, the court should not consider arguments about the parties' private interests; the court must deem the private-interest factors to weigh entirely in favor of the preselected forum, and may consider arguments about public-interest factors only. *Id.* at 582. "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* Third, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.*

The parties dispute the extent to which *Atlantic Marine* controls this case. Plaintiffs emphasize that in *Atlantic Marine* all parties were signatories to the agreement containing the forum-selection clause and the transferee forum was a proper venue under the federal venue statutes. In contrast, Plaintiffs note, venue is not proper in Delaware under the federal venue statutes and not all parties are signatories to the agreements. Defendants contend that *Atlantic Marine* controls because Plaintiffs are bound by the forum-selection clauses in the agreements.

---

[7] A district court considering a typical § 1404(a) motion must evaluate both the convenience of the parties and various public-interest considerations. *Atlantic Marine*, 134 S. Ct. at 581. Factors relating to the parties' private interests include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 581 n.6 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981) (internal quotation marks omitted)). Public-interest factors may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* (internal quotation marks omitted). The Court must also give some weight to the plaintiffs' choice of forum. *Id.*

**B. Analysis**

Under the plain language of § 1404(a), transfer may be made to either (1) any district where the action might have been brought *or* (2) any *other* district to which all parties have consented. Defendants argue that both subsections apply because the District of Delaware is a district where the action might have been brought based on the forum-selection clause. Defendants further argue that Delaware is a district to which all parties have consented. In contrast, Plaintiffs argue that "any district where the action might have been brought" is limited to only those districts in which venue is proper under the federal venue statutes. The parties agree that no federal venue statute sets venue in Delaware, and thus Plaintiffs contend Delaware is not a district where the action might have been brought. Plaintiffs also argue that this case cannot be transferred to Delaware because all parties have not consented to the transfer insofar as Plaintiff Harland Clarke is not a signatory to any agreement containing the forum-selection clause and has not consented to venue in Delaware. The Court need not decide whether the District of Delaware is a district in which this lawsuit "might have been brought" because, as will be discussed, all parties have consented to venue in Delaware.

**1. The forum selection clause is broad and covers all claims.**[8]

In deciding whether the parties have consented to venue in Delaware, the Court begins first with the language of the agreements containing the forum-selection clauses. It is undisputed that the purchase of GlobalScholar involved a number of Transaction Documents, and the Purchase Agreement specifies that the Purchase Agreement and the Transaction Documents contain the complete agreement between the Parties. Purch. Agrmt. § 11.08. Therefore, under the plain language of the contract and as a matter of law, the documents must be construed together to determine the scope and meaning of the parties' agreement. RESTATEMENT (SECOND) OF CONTRACTS § 202(2) (1981) ("A writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together."); *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000) ("In appropriate instances, courts may construe all the documents as if they were part of a single, unified instrument."); *Segovia v. Equities First Holdings, LLC*, No. 06C-09-149-JRS, 2008 WL 2251218, at *9 (Del. Super. Ct. May 30, 2008) ("Not only must

---

[8] Plaintiffs do not challenge the enforceability of the forum-selection clauses. Docket no. 31 at 11 n.3.

contracts be construed as whole documents, but multiple documents evidencing the same transaction must be construed together. When the parties have executed separate documents on the same day covering the same period of time and intend these documents to 'operate as two halves of the same business transaction,' then the Court must treat them as one contract. This approach remains true even if the documents are 'executed by a single party or by two or more parties, and even when some of the documents are executed by parties who have no part in executing the others.'"); *Personal Security & Safety Sys., Inc. v. Motorola, Inc.*, 297 F.3d 388, 390 (5th Cir. 2002) ("We hold that the licensing agreement's arbitration provision governs claims arising out of the stock purchase agreement because the agreements were executed together as part of the same overall transaction and therefore are properly construed together.").

Two of the parties in this lawsuit – Scantron and Raman – are signatories to agreements containing forum-selection clauses. The "Parties" to the Purchase Agreement are defined as Scantron as Buyer and Digital as Seller. The forum-selection clause in the Purchase Agreement states that "each of the Parties" "irrevocably and unconditionally" submits "to the exclusive jurisdiction of any Delaware State court in New Castle County, or Federal court of the United States of America, sitting within New Castle County in the State of Delaware" in "*any action or proceeding arising out of or relating to this Agreement, the agreements delivered in connection with this Agreement, or the transactions contemplated hereby or thereby*" and agrees "not to commence any such action or proceeding except in such courts."

The parties to the Limited Guarantee are defined as Scantron as Guaranteed Party and Raman as Guarantor. Its forum-selection clause states that "Each of the Guarantor and Guaranteed Party" submits "to the exclusive jurisdiction of any Delaware State court in New Castle County, or Federal court of the United States of America, sitting within New Castle County in the State of Delaware" "in any action or proceeding arising out of or relating to this Guarantee or the transactions contemplated hereby" and agrees "not to commence any such action or proceeding except in such courts."

Plaintiffs state that this lawsuit is not a lawsuit between the parties to the contracts about the contracts, and that Plaintiffs do not allege breach of contract or base their right to recover on the terms of the contract. Plaintiffs also contend that Harland Clarke is not a "Party" to the agreements

and therefore is not bound by the forum-selection clause.  Plaintiffs argue that they are "not specifically challenging Kal Raman's performance under his Limited Guarantee."  Therefore, Plaintiffs argue, the forum-selection clauses do not apply to the claims or parties in this lawsuit.

The language in the forum-selection clauses – including claims "arising out of or related to" the agreements *and* the transactions contemplated thereby – is extremely broad.  *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 397-98 (1967) (labeling as "broad" a clause requiring arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement"); *Personal Security & Safety Sys.*, 297 F.3d at 393 ("Where, as here, an arbitration provision purports to cover all disputes 'related to' or 'connected with' the agreement, we have held that the provision is 'not limited to claims that literally 'arise under the contract,' but rather embrace[s] all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute.'"); *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 164-65 (5th Cir. 1998) (holding that when parties agree to an arbitration clause governing "[a]ny dispute . . . arising out of or in connection with or relating to this Agreement," they "intend the clause to reach all aspects of the relationship.").[9]

Plaintiffs assert claims for violations of the Texas Securities Act, statutory fraud, common-law fraud, nondisclosure fraud, and negligent misrepresentation.  The basis for all of Plaintiffs' claims is alleged misrepresentations that induced Plaintiffs to enter into the Purchase Agreement and

---

[9] The parties and the courts tend to analyze arbitration and forum-selection clauses similarly. As noted by one district court:

> Both the United States Supreme Court and the Fifth Circuit have noted the similarities between arbitration clauses and forum selection clauses and have applied the same enforceability analysis to both because an arbitration clause is, "in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519, 94 S.Ct. 2449, 2457, 41 L.Ed.2d 270 (1974); *Haynsworth*, 121 F.3d at 963 (rejecting the distinction between arbitration clauses and forum selection clauses for purposes of analyzing the enforceability of a forum selection clause).

*Smith v. Lucent Technologies, Inc.*, No. 02-0481, 2004 WL 515769 (E.D. La. Mar. 16, 2004). Therefore, courts have treated cases interpreting and applying arbitration clause as generally applicable in cases involving forum-selection clauses.

related transactions to facilitate the sale of GlobalScholar to Plaintiffs.  These claims arise out of and are related to the Purchase Agreement, the Guarantee, and the transactions contemplated thereby (*i.e.*, the purchase of GlobalScholar) and thus fall within the scope of the mandatory forum-selection clause.  Thus, under federal, Texas, and Delaware law, although Plaintiffs are not suing for breach of contract or complaining about Raman's performance under the Guarantee, the clauses are broad enough to encompass all of their claims.  *See Personal Sec.*, 297 F.3d at 391 (when arbitration agreement covers all disputes related to the agreement, it covers allegations of fraudulent misrepresentations made during negotiations leading up to the agreement); *ASDC Holdings, LLC v. Richard J. Malouf 2008 All Smiles Grantor*, No. 6562-VCP, 2011 WL 4552508 (Del. Ch. Sept. 14, 2011) ("Broad forum selection clauses, on the other hand, which expressly cover, for example, all claims between the contracting parties that 'arise out of' or 'relate to' a contract, apply not only to claims dealing directly with the terms of the contract itself, but also to 'any issues that touch on contract rights or contract performance.'"); *In re Harris Corp.*, No. 03-13-00192-CV, 2013 WL 2631700, at *4 (Tex. App.–Austin June 4, 2013) (concluding that broad forum-selection clause covered non-contractual claims such as fraud, fraudulent inducement, and negligent misrepresentation, and listing cases holding the same).[10]

---

[10] Defendants assert that Delaware law governs interpretation of the forum-selection clause given the choice-of-law provision in the Purchase Agreement.  However, Texas, Delaware, and federal law are consistent and each holds that a broad clause like the one in this case would cover Plaintiffs' claims.

In addition, although Plaintiffs assert fraud claims, they have not alleged that the forum-selection clause itself was a product of fraud.  Therefore, under Delaware, Texas, and federal law, Plaintiffs' fraud claims do not invalidate application of the forum-selection clauses in the agreements.  *Carlyle Inv. Mgmt. L.L.C. v. Nat'l Industries Group*, No. 5527-CS, 2012 WL 4847089 (Del. Ch. Oct. 11, 2012) ("Under Delaware and federal law, a party cannot escape a valid forum selection clause, or its analogue, an arbitration clause, by arguing that the underlying contract was fraudulently induced or invalid for some reason unrelated to the forum selection or arbitration clause itself. Instead, the party must show that the forum selection clause itself is invalid.") (citing *Scherk v. Alberto–Culver*, 417 U.S. 506, 519 n.14 (1974) ("[A]n arbitration or forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion.")); *MaxEn Capital LLC v. Sutherland*, No. H-08-3590, 2009 WL 936895, at * 7 (S.D. Tex. April 3, 2009) ("the proper inquiry is whether the forum-selection clause is the result of fraud in the inducement of the forum-selection clause itself") (citing *Afram Carriers, Inc. v. Moeykens*, 145 F.3d 298, 302 n.3 (5th Cir. 1998)); *In re Harris Corp.*, 2013 WL 2631700, at *5 (under Texas law, a party

The only real issues are whether all the parties are bound by or may enforce the clause, and whether being bound by the clause equates to consent to venue under § 1404(a).  Scantron and Raman, as signatories, are bound by and entitled to enforce the forum-selection clause in the Limited Guarantee, and the clause applies to Scantron's claims against Raman because Scantron's claims arise out of or relate to the Guarantee or the transactions contemplated thereby.  The Limited Guarantee references the Purchase Agreement and contains Raman's guarantee of Digital's performance under the Purchase Agreement.  Given that the Limited Guarantee's sole purpose was to guarantee performance under the Purchase Agreement, the transactions contemplated by the Limited Guarantee include the purchase of GlobalScholar and the execution of the Purchase Agreement, and Scantron's claims arise out of or relate to those transactions.  The claims by Scantron against Raman are therefore subject to the mandatory, exclusive forum-selection clause setting venue in Delaware.[11]

**2. The effect of the presence of non-signatories under the agreements and the no-recourse provision.**

Plaintiffs assert, however, that the presence of non-signatories Harland Clarke and Milken prevents enforcement of the forum-selection clause and transfer to Delaware because Harland Clarke has not consented to venue in Delaware and Milken cannot enforce the clause.  Defendants argue that Harland Clarke's claims and both Plaintiffs' claims against Milken are "entirely barred by the Transaction Agreements" and that Plaintiffs cannot escape the requirements of the forum-selection clause by bringing claims that have been waived.  And in any event, Defendants contend, Harland Clarke is bound by and Milken is entitled to enforce the forum-selection clause.

The relevant provisions in the Purchase Agreement and Limited Guarantees include the following:

---

seeking to avoid enforcement of a forum-selection clause based on fraud must show that the forum-selection clause itself was procured through fraud or overreaching).

[11] The Court notes that, even if it could not transfer the entire case to Delaware under § 1404(a), it would at the very least sever the claims brought by Scantron against Raman and transfer them to Delaware pursuant to § 1404(a) because those claims are undisputably subject to the mandatory, exclusive forum-selection clause.  Scantron should not be able to flout the forum-selection clause to which it voluntarily agreed by adding nonsignatory parties.

From the Purchase Agreement:

8.02 <u>Indemnification by Seller</u>.

(a) Subject to the provisions of this <u>Article VIII</u>, . . . Seller [Digital] shall indemnify Buyer [Scantron] and its Affiliates [including Harland Clarke] . . . (collectively, the "<u>Buyer Indemnified Parties</u>") against, and shall hold the Buyer Indemnified Parties harmless from, any Losses resulting from, arising out of, or incurred by the Buyer Indemnified Parties in connection with:

(i) any breach of any representation and warranty contained in <u>Article II</u> and/or <u>Article III</u> or any certificate delivered by or on behalf of Seller hereunder at or prior to the Closing . . .

(ii) any breach of any covenant or agreement contained in this Agreement to be performed or complied with by Seller; . . . .

8.03 <u>Indemnification by Buyer</u>.

(a) Subject to the provisions of this <u>Article III</u>, . . . Buyer [Scantron] shall indemnify Seller [Digital] and its Affiliates and any of their respective former, current and future direct or indirect equity holders, controlling Persons, officers, directors, general or limited partners, members, managers, employees, agents, representatives, successors and assignees (collectively, the "<u>Seller Indemnified Parties</u>") against, and shall hold the Seller Indemnified Parties harmless from, any Losses resulting from, arising out of, or incurred by the Seller Indemnified Parties in connection with:

(i) any breach of any representation or warranty of Buyer under this Agreement or any certificate delivered by or on behalf of Buyer hereunder . . .;

(ii) any breach of any covenant or agreement contained in this Agreement to be performed or complied with by Buyer or, after the Closing, any of the Purchased Subsidiaries or their Subsidiaries after Closing.

8.07 <u>Exclusive Remedy</u>. Each Party hereto acknowledges and agrees that, should the Closing occur, the sole and exclusive remedy of any Person with respect to any and all matters arising out of, relating to or connected with this Agreement and the other transactions contemplated hereby shall be a claim pursuant to the provisions of <u>Section 6.02(a)</u> [related to taxes] or this <u>Article VIII</u>; <u>provided</u>, that the provisions of this <u>Section 8.07</u> shall not (x) apply to any claims that arise from intentional fraud or a Willful and Material Breach by Seller [Digital] or Buyer [Scantron] or (y) limit any injunctive relief or other specific performance remedy under Section 6.08; <u>provided</u>, <u>further</u>, that nothing in this <u>Section 8.07</u> is intended to or shall limit Buyer's rights to pursue any and all remedies available to it under the Restrictive Covenant Agreement and/or any of the Guarantees.

8.09 <u>Limitation on Recourse</u>. Other than (x) pursuant to the Guarantees or (y) arising from intentional fraud, no claim shall be brought or maintained by Buyer [Scantron], the Purchased Subsidiaries or their Subsidiaries, or the successors or permitted assigns of any of them, against any officer, director, partner, member or employee (present or former) of Seller [Digital], the Purchased Subsidiaries or their Subsidiaries, or any direct or indirect equity holder of Seller, and no recourse shall be brought or granted against any of them, by virtue of or based upon any alleged misrepresentation or inaccuracy in, or breach of any of the representations, warranties, covenants or agreements of Seller set forth or contained in, this Agreement or any certificate delivered hereunder.

11.12 <u>No Third Party Beneficiaries</u>. This Agreement shall be binding upon and inure solely to the benefit of the Parties and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other Person any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement; provided, that any Person that is not a Party but, by the terms of Sections 6.02, 6.04 or Article VIII, is entitled to indemnification, shall be considered a third party beneficiary of this Agreement, with full rights of enforcement as though such Person was a signatory to this Agreement.

In the Limited Guarantee between Scantron and KUE LP:

6. <u>No Recourse</u>.

(a) Without limiting any obligations of Seller under the Purchase Agreement, of Guarantor under the Restrictive Covenant Agreement or Guarantor hereunder, the Guaranteed Party [Scantron] agrees and acknowledges that no Person other than the Guarantor has any obligations under this Guarantee and that, notwithstanding that the Guarantor is a Person, the Guaranteed Party [Scantron] has no remedy, recourse or right of recovery against, or contribution from, in each case, with respect to this Guarantee (i)[the "Non-Recourse Parties"], through the Guarantor, Seller or otherwise, whether by or through attempted piercing of the corporate veil or similar action, by the enforcement of any assessment or by any legal or equitable proceeding, by virtue of any statute, regulation or applicable Law, by or through a claim by or on behalf of the Guarantor, Seller or any Purchased Subsidiary directly or indirectly against the Guarantor or any Guarantor Affiliate, or otherwise, except, in each case, for (v) claims against the Guarantor arising from intentional fraud by the Guarantor; provided, that any such claims shall be subject to the Caps, (w) claims arising from a material breach of any of the representations and warranties set forth in Section 5 [of the Guarantee], (x) its rights against the Guarantor under this Guarantee, (y) its rights against Guarantor under the Restrictive Covenant Agreement and (z) its rights against Seller under the Purchase Agreement . . . .

(b) The Guaranteed Party [Scantron] hereby covenants and agrees that it shall not institute, and shall cause each of its Affiliates [including Harland Clarke] and representatives not to institute, directly or indirectly, any Action arising under, or in

connection with, this Guarantee, the Purchase Agreement or the transactions contemplated thereby against the Guarantor or any Non-Recourse Party except for (i) claims by the Guaranteed Party against the Guarantor under and in accordance with this Guarantee, (ii) claims by the Guaranteed Party against Seller under and in accordance with the Purchase Agreement, or (iii) claims under and in accordance with the Restrictive Covenant Agreement.  Recourse against the Guarantor and/or the Seller in accordance with Actions permitted by clauses (i) through (iii) immediately above shall be the sole and exclusive remedy of the Guaranteed Party and all of its Affiliates against the Guarantor or any Non-Recourse Party in respect of any liabilities or obligations arising under, or in connection with, the Purchase Agreement or any of the other agreements contemplated thereby, or the transactions contemplated thereby, and such recourse shall be subject to the limitations described herein and therein.

As noted above, Milken is a Non-Recourse Party.

Defendants argue that "Scantron thus covenanted, on its own behalf and on behalf of its affiliates including Harland Clarke, not to bring the claims Plaintiffs have now brought (i) by Harland Clarke, or (ii) against Milken anywhere, let alone outside of the forum selected in the contract."  Docket no. 18-1 (Memo in Support) at 17.  The Court need not decide whether the Transaction Documents preclude Harland Clarke from bringing suit or bar Plaintiffs' claims against Milken, and those issues are properly left for the Court that will be deciding the merits of Plaintiffs' claims.

Instead, the Court finds that the plain language of the Transaction Documents evidences the parties' intent that whatever claims were brought by Scantron or its Affiliates (including Harland Clarke) against Raman or Milken, those claims would be brought only "under and in accordance with [the] Guarantee," "under and in accordance with the Purchase Agreement," or "under and in accordance with the Restrictive Covenant Agreement," and subject to the limitations described therein.  All of those agreements contain broad forum-selection clauses that encompass Plaintiffs' claims.  Certain provisions in the Purchase Agreement and Guarantee recognize that there could be claims "arising from intentional fraud."  By recognizing in the contract that certain entities could potentially bring claims "arising from intentional fraud" while also utilizing a broad forum-selection clause that governed "any action or proceeding arising out of or relating to this Agreement, the agreements delivered in connection with this Agreement, or the transactions contemplated hereby or thereby," the parties intended to encompass any claims "arising from intentional fraud" within the

forum-selection clause.

Plaintiffs argue that the respective forum-selection clauses only bind the respective "parties" to the agreements – Scantron and Raman.  However, given the fact that Harland Clarke actively negotiated the deal and allegedly purchased GlobalScholar along with Scantron, it is unreasonable to read the agreements as providing that Scantron and its Affiliates would sue the Guarantors and Non-Recourse Parties only "under and in accordance with" the Guarantee, the Purchase Agreement, and the Restrictive Covenant Agreement (all of which contain forum-selection clauses) and the limitations described therein, but that only Scantron must sue in Delaware, while Harland Clarke could sue anywhere.  Rather, Scantron agreed for itself and its affiliates that such actions would only be brought in Delaware.  The parties were represented by counsel who would have understood the consequences of utilizing a broad forum-selection clause.

Thus, to the extent Plaintiffs bring claims "arising from intentional fraud," those claims were contemplated by the Transaction Documents and are "under and in accordance with" the Purchase Agreement or Guarantee.  Further the claims arise out of or relate to the agreements and the transactions contemplated thereby, and thus are subject to the broad forum-selection clauses in the Agreements.  The Court concludes that the language of the contract itself is sufficient to bind Scantron and Harland Clarke to the forum-selection clause for the claims asserted in this lawsuit.  Nevertheless, the Court will consider whether background principles of contract law bind Harland Clarke to the forum-selection clause.

### 3. Harland Clarke is bound by the forum-selection clause under background principles of contract law.

Harland Clarke contends that its claims, which may only be brought under and in accordance with the Purchase Agreement or Guarantee, are nevertheless not subject to the forum-selection clauses because those only apply to the Parties to the various agreements, and Harland Clarke is not a signatory party to any agreement with a forum-selection clause.  In response, Defendants assert various theories under which Harland Clarke is bound by the forum-selection clause even though it is a non-signatory.

### a. What law governs who is bound by the forum-selection clause?

The parties dispute the issue of what law governs who is bound by the forum-selection

clause.  It is somewhat uncertain whether federal or state law governs this issue.  Plaintiffs contend that the issue is governed by state law, specifically Texas law.  Defendants argue that the issue is governed by federal law, and that even if state law controls, it would be Delaware law since that is the substantive law chosen by the parties in the agreements.

In *Washington Mutual Finance Grp. LLC v. Bailey*, 364 F.3d 260 (5th Cir. 2004), the Fifth Circuit recognized that, in determining whether parties agreed to arbitrate a certain matter, courts apply the contract law of the particular state that governs the agreement.  *Id.* at 264.  However, it also noted that it "is often an uncertain question" whether state or federal law governs the determination whether a party should be compelled to arbitrate its claims.  *Id.* at 267 n.6.  It found that "nearly all federal circuit courts faced with the specific question . . . – namely, to what extent a non-signatory is bound by an arbitration provision contained in a contract she is suing under – have applied the federal substantive law of arbitrability to resolve the issue."  *Id.* Despite noting that the court in *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1075-75 (5th Cir. 2002) had applied Texas law to determine whether a particular non-signatory was bound by an arbitration agreement, the *Bailey* court agreed with this trend and found "it appropriate to apply the doctrine of equitable estoppel as outlined by federal courts without reference" to state law.  *Id.*

Plaintiffs argue that the Supreme Court's decision in *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009) requires courts to apply state law to the issue of who is bound by an arbitration agreement (and by extension a forum-selection clause).  In *Carlisle*, the Supreme Court clarified that while the FAA creates substantive federal law regarding the enforceability of arbitration agreements, "background principles of state contract law" control the interpretation of the scope of such agreements, "including the question of who is bound by them." 556 U.S. at 630. The Supreme Court then explained that "'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'"  *Id.*  In *Todd v. Steamship Mutual Underwriting Association (Bermuda) Ltd.*, 601 F.3d 329, 336 (5th Cir. 2010), the Fifth Circuit discussed *Carlisle* and noted that, "In *Carlisle*, the Supreme Court made clear that state law controls whether an arbitration clause can apply to nonsignatories."

Since *Carlisle* and *Todd*, some district courts have applied state law to the question of who

-18-

is bound by an arbitration clause.  *See Galitski v. Samsung Telecommunications Am., LLC*, No. 3:12-CV-4782-D, 2013 WL 6330645, at *3 & n.8 (N.D. Tex. Dec. 5, 2013); *Evans v. TIN, Inc.*, No. 11-2067, 2012 WL 2343162, at *4 (E.D. La. June 20, 2012) ("Because the FAA does not 'purport [ ] to alter background principles of state contract law regarding the scope of agreements,' courts must look to state law to determine which contracts are enforceable against third parties."); *Beach v. Green Tree Servicing, LLC*, No. H-08-cv-2358, 2009 WL 1759595, at *3 (S.D. Tex. June 17, 2009). Some courts, however, have continued to find the question unsettled.  *See Graves v. BP America, Inc.*, 568 F.3d 221, 223 (5th Cir. 2009) (decided two days after *Carlisle* and finding it unnecessary to decide whether federal or state law applies because "federal and state law dovetail to provide the same outcome"); *see also Lemus v. CMH Homes, Inc.*, 798 F. Supp. 2d 853, 859 (S.D. Tex. 2011) (applying federal and Texas law without specifying which controlled).  And others have continued to apply federal law to the question of who is bound without discussing *Carlisle*.  *See, e.g.*, *Griffin v. ABN Amro Mortg. Group, Inc.*, 378 F. App'x 437, 439-40 (5th Cir. 2010) (applying federal law of equitable estoppel).

Generally whether state or federal law applies will have no effect on the outcome, since state and federal law both utilize background principles of contract and agency law, and those principles are typically similar across jurisdictions.   "[F]ederal courts have held that so long as there is some written agreement to arbitrate, a third party may be bound to submit to arbitration.  Ordinary principles of contract and agency law may be called upon to bind a nonsignatory to an agreement whose terms have not clearly done so. Six theories for binding a nonsignatory to an arbitration agreement have been recognized: (a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing/alter ego; (e) estoppel; and (f) third-party beneficiary." *Hellenic Investment Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517 (5th Cir. 2006) (quoting *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 355-56 (5th Cir. 2003)).   These same theories were listed by the Supreme Court in *Carlisle* as background principles of state law. The Court concludes that there is no significant difference among Delaware, Texas, and federal law in this case, and thus it need not decide which law controls.

### b. Third-party beneficiary

Defendants assert that Harland Clarke is an express third-party beneficiary of the Purchase

Agreement and is bound by its forum-selection clause, which encompasses Harland Clarke's claims. The Court agrees.

Non-signatory, third-party beneficiaries of agreements containing arbitration or forum-selection clauses may be bound to the clause, depending on the parties' intentions at the time the contract was executed. *JP Morgan Chase v. Conegie ex rel. Lee*, 492 F.3d 596, 600 (5th Cir. 2007); *Fleetwood Enters.*, 280 F.3d at 1075 ("Intermediate appellate courts in Texas have also held that non-signatories are bound by arbitration agreements where the non-signatories are third-party beneficiaries of the contracts.").[12] "Parties are presumed to be contracting for themselves only" and "[t]his presumption may be overcome only if the intent to make someone a third-party beneficiary is 'clearly written or evidenced in the contract.'" *Bridas*, 345 F.3d at 363; *Fleetwood Enters.*, 280 F.3d at 1075 (Texas law). "[I]f an agreement specifically names a nonsignatory as a recipient of benefits under the contract, the third-party beneficiary theory will bind the nonsignatory to the agreement." *Ace Am. Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 199 (S.D. Tex. 2008).

Under the Purchase Agreement, "any Person that is not a Party but, by the terms of Sections 6.02, 6.04 or Article VIII, is entitled to indemnification, shall be considered a third party beneficiary of this Agreement, with full rights of enforcement as though such Person was a signatory to this Agreement." Maron Decl. Ex. C at § 11.12. Section 8.02 of the Agreement, located in Article VIII, includes "Buyer [Scantron] and its Affiliates" in the definition of "Buyer Indemnified Parties" who are entitled to indemnification under the Purchase Agreement. "Affiliate" of any particular Person is defined as "any other Person controlling . . . such particular Person," where "'control' means the possession, directly or indirectly, of the power to direct the management and policies of a Person whether through the ownership of voting securities, Contract or otherwise."

Defendants argue that Harland Clarke is an "Affiliate" of Scantron, which makes it a Buyer

---

[12] In *JP Morgan v. Conegie*, Conegie's mother signed an admission agreement for nursing home care, naming Conegie as third-party beneficiary of the contract. Conegie later sued Magnolia Healthcare, which owned and operated the nursing home, in state court, for negligence and related claims. Conegie then sought to amend her complaint to join JP Morgan, alleging that it controlled Magnolia and was liable for her injuries. JP Morgan filed suit in federal court to enforce the arbitration clause in the admission agreement under the FAA. The Fifth Circuit held that, as a third-party beneficiary of the agreement, Conegie was bound by the agreement to arbitrate any dispute arising from it. *Id.* at 600.

Indemnified Party under § 8.02 and entitled to indemnification under Article III.   Therefore, Harland Clarke is a third-party beneficiary of the Purchase Agreement under § 11.12.[13]   Section 11.12 provides that third-party beneficiaries of the Agreement have "full rights of enforcement as though such Person was a signatory to this Agreement."   Accordingly, third-party beneficiaries are treated as parties with full rights of enforcement of all terms of the Purchase Agreement.   And, as noted, the parties agreed that Harland Clarke would sue only "under and in accordance with" the agreements that contained the forum-selection clause.   As such a third-party beneficiary, Harland Clarke is also bound by the forum-selection clause in the Agreement.

### c. estoppel

Defendants also contend that Harland Clarke is bound to the forum-selection clause under the doctrine of direct benefits estoppel under Texas and federal law because it negotiated the Transaction Agreements and sought to directly benefit from the purchase of GlobalScholar. Defendants further contend that Harland Clarke is bound under estoppel theories adopted by Delaware courts.   The Court agrees.

### 1. direct benefits estoppel

"Direct benefits estoppel is a type of equitable estoppel first applied in the arbitration context by federal courts and subsequently adopted by [Texas] courts."   *Carr v. Main Carr Dev., LLC*, 337 S.W.3d 489, 497 (Tex. App.–Dallas 2011, pet. denied).   Texas and federal law recognize that the doctrine of direct benefits estoppel can bind a non-signatory plaintiff to a forum-selection or arbitration clause.   Direct benefits estoppel may apply when a nonparty seeks, through its claim, to derive a direct benefit from the contract containing the arbitration or forum-selection provision.   *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131 (Tex. 2005).   A nonparty may seek or obtain direct benefits by filing a lawsuit on the contract or by seeking and obtaining substantial benefits from the contract itself.   *Id.* at 132-33.

In *Weekley Homes*, the adult child of a house purchaser brought a personal injury action against the builder to recover for asthma allegedly caused by dust from the house repairs.   The adult child was not a signatory to the contract between the house purchaser and the builder that contained

---

[13]Although Plaintiffs challenge Defendants' assertion that Milken is a third-party beneficiary, they do not appear to challenge the assertion that Harland Clarke is a third-party beneficiary.

the arbitration clause. The Texas Supreme Court acknowledged that the plaintiff's claims arose from tort law and not the contract, but also found that she had "not merely resided in the home," but had "directed how Weekley should construct many of its features, repeatedly demanded extensive repairs to 'our home,' personally requested and received financial reimbursement for expenses 'I incurred' while those repairs were made, and conducted settlement negotiations with Weekley (apparently never consummated) about moving the family to a new home." *Id.* at 133. The Court held, "[h]aving obtained these substantial actions from Weekley by demanding compliance with provisions of the contract, Von Bargen cannot equitably object to the arbitration clause attached to them." *Id.* Thus, while the plaintiff "never based her personal injury claim on the contract, her prior exercise of other contractual rights and her equitable entitlement to other contractual benefits prevent[ed] her from avoiding the" arbitration clause. *Id.* at 135.

Defendants contend that Harland Clarke is bound to the forum-selection clause under the theory of direct benefits estoppel because it negotiated the Transaction Agreements and sought to directly benefit from the purchase of GlobalScholar. As noted, Plaintiffs allege that Harland Clarke conceived of the transaction, executed a nondisclosure agreement with Digital to facilitate negotiations, actively negotiated the terms of the Transaction Agreements, including through its President and CEO and its in-house counsel, and sent the letter formally proposing the acquisition of GlobalScholar by Harland Clarke or Scantron. In addition, the First Amended Complaint does not differentiate between Harland Clarke and Scantron as purchasers of GlobalScholar, repeatedly alleging that Defendants engineered the sale "to Plaintiffs," that "Plaintiffs" were induced to pay the purchase price, and that "Plaintiffs" made the collective decision to pay the purchase price. Scantron and Harland Clarke assert identical claims, and Harland Clarke does not allege that it suffered any independent injury from Scantron. Defendants contend that the fact that Harland Clarke alleges that it suffered losses from the acquisition assumes that it directly sought to gain from that acquisition and thus embraced the agreements that made the acquisition possible.[14] Further, the Agreement

---

[14] In addition, in *Hellenic Investment*, 464 F.3d 514, 518 (5th Cir. 2006), the Fifth Circuit noted that the "very nature" of a negligent misrepresentation claim requires that the information is supplied for the purchaser's guidance and benefit and that, "[h]aving stated a claim that expressly requires that [the defendant's] performance be for [the plaintiff's] benefit, [the plaintiff could not] avoid the estoppel implications of its position. *Id.* at 519. Plaintiffs have asserted negligent

expressly benefits Harland Clarke insofar as it contains indemnification provisions in favor of Harland Clarke identical to those of Scantron.   The Court finds these circumstances sufficient to trigger direct-benefits estoppel.

Moreover, Scantron agreed that it and Harland Clarke would sue only "under and in accordance with" the Guarantees, the Purchase Agreement, and the Restrictive Covenant Agreement. The fact that Harland Clarke may sue only "under and in accordance with" the Agreements containing the forum-selection clauses is sufficient to bind Harland Clarke under a direct-benefits estoppel theory.  When a party sues under an agreement, it has sufficiently embraced the agreement to be bound by a forum-selection clause therein, even with regard to its claims against a non-signatory such as Milken.  *See Wood v. PennTex Resources, L.P.*, 458 F. Supp. 2d 355, 370 (S.D. Tex. 2006) (considering a similar stock purchase agreement, direct-benefits estoppel may compel arbitration by a nonsignatory who sued a nonsignatory).

*2. "closely related"*

Defendants further assert that Harland Clarke is bound under Delaware law, which holds that forum selection clauses "bind nonsignatories that are closely related to the contractual relationship" such that it was foreseeable they would be bound.  Delaware courts use a three-part inquiry to determine whether a nonsignatory to an agreement is bound by a forum selection clause in that agreement: First, is the forum selection clause valid? Second, are the non-signatories third-party beneficiaries, or closely related to, the contract? Third, does the claim arise from their standing relating to the agreement?  If all three questions are answered in the affirmative, the forum selection clause will bind the nonsignatory.  *Baker v. Impact Holding, Inc.*, No. 4960-VCP, 2010 WL 1931032, at *3 (Del. Ch. May 13, 2010).  Case law suggests two ways a party can be closely related to an agreement: (1) the party receives a direct benefit from the agreement or (2) it was foreseeable that the party would be bound by the agreement.  *Id.* at *4.

Here, it is undisputed that the forum-selection clause is valid.  As noted, Harland Clarke is

_____

misrepresentation claims against both Milken and Raman in this case.

a third-party beneficiary of the agreement.[15]  Harland Clarke is also closely related to the contract because it received direct benefits from the agreement (the alleged purchase of the business, the ability to sue as third-party beneficiary, the right to indemnification) and it actively negotiated the agreements such that it was foreseeable that it would be bound.  The parties agreed that all claims against Raman and Milken brought by Harland Clarke would be "under and in accordance with" the agreements.  Last, Harland Clarke's claims arise from its standing relating to the agreement.  The court in *Weygandt* explained that the meaning of the third prong is "that the agreement containing the forum selection clause must also be the agreement that gives rise to the substantive claims brought by or against a non-signatory in order for the forum selection clause to be enforceable against the non-signatory."  *Weygandt v. Weco, LLC*, No. 4056-VCS, 2009 WL 1351808, at *4 n.15 (Del. Ch. May 14, 2009).  To the extent Harland Clarke may sue Raman and Milken, it is under and in accordance with the agreements, and thus its claims arise from the agreements that contain the forum-selection clauses.  Therefore, Harland Clarke is bound by the forum-selection clause under Delaware law.

### 4. All parties consent to venue in the District of Delaware.

It is undisputed that Plaintiff Scantron is a signatory to the Purchase Agreement that contains the forum-selection clause.  Defendant Kal Raman is a signatory to a Limited Guarantee that also contains a forum-selection clause.  Plaintiff Harland Clarke and Defendant Milken are not signatories to any of the agreements containing a forum-selection clause.  However, Defendant Milken (and Defendant Raman) have filed the instant motion requesting transfer to Delaware, and that is sufficient consent to venue in the District of Delaware.  As discussed above, Harland Clarke is bound by the forum-selection clause.

A party who agrees to a forum-selection clause has consented to venue there for purposes of § 1404(a).  *Atlantic Marine*, 134 S. Ct. at 579 (rephrasing the language "to which all parties have

---

[15] Harland Clarke's claims also arise from its status as a third-party beneficiary.  As noted, the Purchase Agreement gives Harland Clarke full rights of enforcement as though it were a signatory.  Its third-party beneficiary status is not limited to certain aspects of the agreement, and, as noted, Harland Clarke may sue only "under and in accordance with" the agreements.  Therefore, its claims arising under and in connection with the Transaction Documents and the underlying transactions are governed by the forum-selection clauses.

consented" in § 1404(a) as "to which the parties have agreed by contract or stipulation").  Plaintiffs argue that being "bound by" a forum-selection clause in a contract is not the same thing as signing the agreement and thereby consenting to the venue designated therein, and thus that the fact that it is bound by the forum-selection clause is insufficient for the Court to find that it has consented to venue in Delaware for purposes of § 1404(a).  However, the Court agrees with Defendants that a party that is bound by a mandatory forum-selection clause like the one in this case has consented to that forum for purposes of § 1404(a).

Defendants contend that if Scantron is bound by the forum-selection clause (which in this case is labeled as "consent to jurisdiction" and in which the parties expressly consent to venue in Delaware), then it has effectively consented to venue in Delaware.  Defendants have located three cases and cited them in their supplemental reply.  Docket no. 58 at 12 (citing *Hadley v. Shaffer*, No. 99-144-JJF, 2003 WL 21960406, at *7 (D. Del. Aug. 12, 2003) ("Because the [nonsignatory] Hadleys are bound by the forum selection clause, the Court concludes that they have expressly consented to the jurisdiction of this Court."); *Infinity Consulting Group, LLC v. Am. Cybersystems, Inc.*, No. 09-CV-1744 (JS)(WDW), 2010 WL 2267470, at *2 (E.D.N.Y. May 30, 2010) ("[Nonsignatory] is 'closely related' enough to the contract such that he is bound by the contract's forum selection clause and thus consented to jurisdiction in the E.D.N.Y."); *Affiliated Mortg. Protection, LLC v. Tareen*, No. 06-4908(DRD), 2007 WL 203947, at *3 (D.N.J. Jan. 24, 2007) (finding nonsignatory defendants "'closely related to the contractual relationship' and , therefore, . . . bound by the forum selection clause in the contract . . . giving this Court jurisdiction over them by implied consent").  Although there is scant case law on this issue, the Court agrees with Defendants and holds that a party bound by a forum-selection clause is bound by the expression of consent therein, and has thereby sufficiently consented to the designated forum for purposes of § 1404(a).[16]

_____

[16] Plaintiffs argue that such a holding "raises serious due process implications – essentially forcing a plaintiff to litigate their claims in an improper venue where they never agreed to litigate." Docket no. 52 at 6.  The Court disagrees.  There would be little point to finding a party "bound by" a forum-selection clause or arbitration clause if the effect of being bound were other than to require the party to litigate in the designated forum or to arbitrate their claims.

### 5. Defendant Milken may enforce the forum-selection clause.

Plaintiffs argue that a non-signatory such as Milken may not enforce a forum-selection clause against a non-signatory such as Harland Clarke.  Scantron agreed that it and Harland Clarke would not sue Non-Recourse parties such as Milken except "under and in accordance with" the various transaction agreements, all of which contained mandatory forum-selection clauses.  Defendants argue that Milken is a third-party beneficiary of the Purchase Agreement and Limited Guarantee and entitled to enforce the forum-selection clause.  *See, e.g.*, *Dos Santos v. Bell Helicopter Textron, inc. Dist.*, 651 F. Supp. 2d 550 (N.D. Tex. 2009); *Clinton v. Janger*, 583 F. Supp. 284, 290 (N.D. Ill. 1984).

Defendants assert that Milken is a third-party beneficiary of the transaction agreements because he is a Seller Indemnified Party under § 8.03(a) and an express third-party beneficiary under § 11.12 of the Purchase Agreement.  The Court agrees that Milken is a party entitled to indemnification and therefore a third-party beneficiary of the Purchase Agreement and entitled to enforce the forum-selection clause.  Because Harland Clarke is bound by the forum-selection clause, Milken may enforce the clause against Harland Clarke.

Defendants also argue that Milken is a "Non-Recourse Party" as that term is defined in the Limited Guarantee between Scantron and LP, and is therefore an express third-party beneficiary of that agreement as well.  Plaintiffs argue that Milken cannot enforce the forum-selection clause in the Limited Guarantee because it provides that Non-Recourse Parties are third-party beneficiaries only with "full rights of enforcement with respect to the provisions of this Guarantee which reference Non-Recourse Parties" and the forum-selection clause does not reference Non-Recourse Parties. However, Section 6 allows Non-Recourse Parties to enforce the no-recourse provisions, under which Scantron agreed on its behalf and on behalf of Harland Clarke not to institute any action except for "under and in accordance with the Guarantee" or "under and in accordance with the Purchase Agreement," and "such recourse shall be subject to the limitations described herein and therein." To the extent Plaintiffs are suing under and in accordance with the Purchase Agreement, the Court has already concluded that both Scantron and Harland Clarke are bound by the forum-selection clause therein.  Thus, this provision allows Milken to enforce the forum-selection clause against Scantron and Harland Clarke.

**6. Absent extraordinary circumstances, the forum-selection clause should be enforced.**

When the parties have agreed to (or are bound by) a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Plaintiffs argue that, if this case can be transferred, all of the private and public interest factors should be considered because Harland Clarke was not a signatory to any agreement containing a forum-selection clause and therefore did not waive its right to have its private interests considered. Plaintiffs assert that the Supreme Court limited its discussion in *Atlantic Marine* to parties to a forum-selection clause and based its reasoning on the parties' expectations and bargained-for exchange. However, the Court holds that, when a party is "bound by" a contract, it is subject to the terms of the contract that resulted from the bargained-for exchange, regardless of whether it itself bargained for those terms. In any event, Harland Clarke actively negotiated the contract, and thus participated in the bargained-for exchange. Because both of the Plaintiffs in this case bargained for and are bound by the forum-selection clause, the Court will not consider Plaintiffs' private-interest factors. The Court thus turns to consideration of the public-interest factors.

*a. administrative difficulties flowing from court congestion*[17]

Defendants argue that this factor is neutral, since both this Court and the District of Delaware "are very busy." Defendants note that the median time from filing to disposition in 2012 was 6.8 months in this district and 8.6 months in the District of Delaware. In 2013, the median time from filing to disposition was 7.1 months in this district and 7.6 months in the District of Delaware. This is an insignificant difference.

Plaintiffs contend that this factor favors retaining venue here because this district has a faster median time to trial (17.8 months in 2012 and 2013) than Delaware (29.8 months in 2012 and 27.6 months in 2013). In reply, Defendants assert that time to trial is "the most speculative" factor. Docket no. 34 at 18 (citing *On Semiconductor Corp. v. Hynix Semiconductor, Inc.*, No. 6:09-CV-390, 2010 WL 3855520, at *7 (E.D. Tex. Sept. 30, 2010) ("This factor appears to be the most speculative, and this factor alone should not outweigh other factors.")). Defendants assert that while

---

[17]   Court statistics are obtained from the United States Courts' website at http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementStatistics/2013/district-fcms-profiles-september-2013.pdf

time to trial is longer in Delaware, the median time to disposition is only slightly longer. Defendants cite *Shawn Massey Farm Equip., Inc. v. CLAAS of Am., Inc.*, No. 4:12-CV-300, 2012 WL 7004153, at *6 (E.D. Tex. Dec. 19, 2012) (magistrate judge report and recommendation), in which the court held that a difference of only a few months in time to trial between transferor and transferee courts rendered this factor neutral.

In *On Semiconductor*, the court reasoned that, although cases reached trial sooner in the transferee district, the difference of five months was neutral given the speculative nature of this factor. The Federal Circuit has similarly held that this factor "appears to be the most speculative" and that "case-disposition statistics may not always tell the whole story." *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). Given that very few cases proceed to trial and that courts cannot predict how a case might be resolved, "the speed of the transferee district court should not alone outweigh all of [the] other factors." *Id.*

The difference in time to disposition is not significant, but the difference in time to trial is. The Court finds that this factor weighs slightly against transfer. *See Uniloc USA, Inc. v. Distinctive Dev. Ltd.*, No. 6:12-CV-462-LED, 2013 WL 4081076, at *7 (E.D. Tex. Aug. 5, 2013) (difference of six months in time to trial weighed against transfer); *Glaxo Grp. Ltd. v. Genentech, Inc.*, No. C 10-00675 JSA, 2010 WL 1445666, at *5 (N.D. Cal. Apr. 12, 2010) (fact that transferee court less congested weighed in favor of transfer). However, the difference in court congestion presents no extraordinary circumstance.

### b. *local interest in having localized controversies decided at home*

Defendants argue that this case is not factually connected to this District. Although Harland Clarke is headquartered here, Defendants assert that the Transaction Documents contemplate that Harland Clarke would not bring any claims, and Scantron, not Harland Clarke, actually purchased GlobalScholar. Further, although Scantron claims it is headquartered here, Defendants dispute this claim, based on Scantron's own website and its prior sworn statements. Further, both Plaintiffs are incorporated in Delaware and are therefore citizens of Delaware. Defendants are located in California and Washington, and GlobalScholar is headquartered in Washington. Defendants assert that the relevant events took place either by phone or email, or in meetings in California, New York, Washington, and India. Defendants therefore argue that this factor is neutral.

-28-

Plaintiffs argue that this case has no connection to Delaware other than the forum-selection clause and choice-of-law clause in the Transaction Agreements, but this is not a breach-of-contract case between the signatories. Rather, Plaintiffs contend, this is an action based on Defendants' fraudulent conduct that injured them in San Antonio, where Harland Clarke maintains its principal place of business and Scantron's high-level officers were located. Plaintiffs provide evidence that Harland Clarke maintains its principal place of business and corporate headquarters in San Antonio, and that Scantron's CEO, Secretary and General Counsel, and CFO lived and worked in the Western District of Texas at the time in question and today. Plaintiffs assert that Plaintiffs' representative, Ben Cosby, was in Texas when he participated in a phone call to explore Plaintiffs' interest in acquiring GlobalScholar. Plaintiffs argue that "[m]any of Defendants' misrepresentations were made to Plaintiffs' agents who lived and worked in" the Western District of Texas. Plaintiffs contend that because this case has no connection to Delaware, the injury occurred in this district, and Texas has an interest in preventing entities doing business here from being the victims of fraudulent schemes, this factor weighs heavily in favor of retaining venue.

In reply, Defendants assert that Plaintiffs "took liberties" in asserting that Scantron's corporate headquarters and principal place of business are in San Antonio, despite proof, including their own prior sworn statements, that Scantron is based on Minnesota. Defendants note that Plaintiffs focus on Harland Clarke, but fail to demonstrate what Harland Clarke's injury even is, given that Scantron purchased GlobalScholar. But even assuming that Harland Clarke was injured, Defendants assert that Plaintiffs have pointed to only one early telephone call regarding the transaction in which Harland Clarke's officer participated by telephone. Defendants argue that although Plaintiffs assert that misrepresentations were made to Scantron officials who lived in Texas, they do not state that the misrepresentations were actually received in Texas, and Plaintiffs do not dispute that "*all* of the meetings leading up to the sale of GlobalScholar took place *outside* Texas." Docket no. 34 at 19. Defendants assert that there is no significant relationship to Texas and this factor should be considered neutral.

The Court finds that this factor is neutral. Most of the relevant events underlying this lawsuit took place outside of San Antonio. Although Plaintiffs identify one misrepresentation that was allegedly received in San Antonio, and although Harland Clarke is headquartered here, both

Plaintiffs are citizens of Delaware, the forum-selection clause designates Delaware as the exclusive forum, and parties designated Delaware law.  The Court therefore finds that the Western District of Texas and the District of Delaware have similar interests in deciding this case.

 *c. familiarity of the forum with the law that will govern the case*

 Defendants assert that the Delaware choice-of-law provision ensures that Delaware law will apply, and that this factor therefore weighs heavily in favor of transfer to Delaware.  Plaintiffs disagree, stating that "it is unclear whether the choice of law provision applies to *any* of Plaintiffs' claims and it certainly does not apply to *all* of them."  Plaintiffs argue that their claims "do not relate to the breach, interpretation, construction, validity, termination, or enforcement of the Purchase Agreement and thus the choice of law provision most likely does not apply."  Docket no. 31 at 28. Plaintiffs assert that, at the most, uncertainty about application of the choice-of-law provision renders this factor neutral.  Plaintiffs also argue that this Court is more familiar with their Texas statutory claims (Texas Securities Act and Texas Business & Commerce Code).

 However, as pointed out by Defendants, the choice-of-law provision is broad, and covers "*[a]ll matters relating to this Agreement* or the breach, interpretation, construction, validity, termination and enforcement of this Agreement."  It also requires the application of Delaware law regardless of whether choice-of-law rules would require application of a different state's law. Defendants note that court have found that narrower choice-of-law provisions have been found to govern the types of claims being asserted in this case.  *See, e.g.*, *Abry Partners V, L.P. v. F&W Acquisition, LLC*, 891 A.2d 1032, 1046-49 (Del. Ch. 2006) (choice-of-law clause stating that agreement "shall be governed by, and construed in accordance with" Delaware law covered tort claims seeking rescission on contract based on alleged misrepresentations); *Weil v. Morgan Stanley DW Inc.*, 877 A.2d 1024, 1032-33 (Del. Ch. 2005); *McReynolds v. Trilantic Capital Partners IV L.P.*, No. 5025-VCL, 2010 WL 3721865, at *7 n.2 (Del. Ch. Sept. 23, 2010); *see also  Van Lake v. Sorin CRM USA, Inc.*, No. 12C-04-036 JRJ CCLD, 2013 WL 1087583, at *6 (Del. Super. Feb. 15, 2013) (choice-of-law provision governing all disputes or claims arising out of or relating to agreement includes fraud, fraudulent inducement, and negligent misrepresentation claims).

 Defendants argue that the determination of Plaintiffs' claims will require interpretation of the various contractual provisions that Defendants will assert as defenses, including the provisions

of the Limited Guarantees that bar claims by Harland Clarke and against Milken and the anti-reliance clauses of the Purchase Agreement, under which the parties disclaimed any extra-contractual representations.  Defendants assert that these issues will unquestionably be governed by Delaware law under the choice-of-law clause.  Defendants further contend, and the Court agrees, that Delaware law issues will likely far exceed any questions of Texas law that may arise under the two Texas statutory claims, assuming they survive application of the Delaware choice-of-law provision.

Plaintiffs argue that, if Defendants were to prevail on their argument that Delaware law applies to all claims, that would deprive them of their claims under the Texas Securities Act, which would be contrary to public policy and would constitute the sort of "exceptional circumstances" described by the Supreme Court in *Atlantic Marine* to warrant denial of Defendants' transfer motion.  However, Plaintiffs recognize that there is Texas law holding that the anti-waiver provisions are not a bar to a forum-selection clause.  *Young v. Valt.X Holdings, Inc.*, 336 S.W.3d 258 (Tex. App.– Austin 2010, pet. dism'd).

Moreover, this issue is not related to the forum in which the case is tried; it is an issue of which state's law will govern and, in turn, whether the Texas statutory claims will be permitted to proceed.  Plaintiffs argue that "Defendants . . . take a more extreme position: that a forum-selection clause in agreements not signed by the claimant (here, Harland Clarke) can be used to deny the claimant its right to assert a claim under the Texas Securities Act that cannot be waived."  However, it is the choice-of-law clause, not the forum-selection clause, that purportedly precludes Plaintiffs from bringing Texas statutory claims.  Thus, Plaintiffs' argument goes to the choice-of-law clause, not the forum-selection clause.  The scope of the choice-of-law clause and whether it precludes Plaintiffs from proceeding with Texas statutory claims will be decided by either this Court or the Delaware court, and either court could decide that the choice-of-law clause governs and requires application of Delaware law and excludes Plaintiffs' Texas Securities Act claim.  Therefore, this argument is not relevant to which forum should decide the case, and does not weigh against a transfer to Delaware or present "exceptional circumstances" precluding transfer.  Even if Texas law applies to some or all claims, the Supreme Court noted in *Atlantic Marine* that "federal judges routinely apply the law of a State other than the State in which they sit" and thus this factor presents no extraordinary circumstance.

Because Delaware law will likely predominate in this case, the Court finds that this factor favors transfer.  Further, this factor presents no extraordinary circumstance preventing transfer.

*d. conflict of law problems that may arise*

All parties agree that this factor is neutral.

*e. conclusion - public factors*

The Court finds that the public factors do not require the Court to deny the motion to transfer.  Court congestion alone does not defeat the other factors.  Further, the Supreme Court in *Atlantic Marine* expressly noted that the public interest factors "will rarely defeat a transfer motion" and the practical result is that "forum-selection clauses should control except in unusual cases." *Atlantic Marine*, 134 S. Ct. at 582.  Plaintiffs have not shown that this case presents the unusual or extraordinary circumstances under which the transfer motion should be denied.

### Conclusion

The Court agrees with Defendants that the forum-selection clauses and the parties' clear intent mandate that any actions arising out of or relating to the GlobalScholar sale be brought in Delaware.  The Court therefore GRANTS Defendants' motion to transfer venue to the District of Delaware (docket no. 18).  The Court DENIES the motion for a hearing (docket no. 36).  The Court DISMISSES AS MOOT Defendants' motion to dismiss for improper venue (docket no. 38).  The Clerk is directed to TRANSFER this case to the District of Delaware.

It is so ORDERED.

SIGNED this 4th day of February, 2014.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE